## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## WICHITA FALLS DIVISION

| | | |
|---|---|---|
| **BRENDA COLEEN ROBINSON,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 7:12-CV-00163-BL** |
| | § | **ECF** |
| | § | |
| **CAROLYN W. COLVIN,** | § | |
| **Acting Commissioner of Social Security,** | § | |
| | § | |
| **Defendant** | § | **Assigned to U.S. Magistrate Judge** |

## MEMORANDUM OPINION AND ORDER

Pursuant to 42 U.S.C. § 405(g), Plaintiff Brenda Coleen Robinson seeks judicial review of the Commissioner of Social Security's decision, which denied her applications for a period of disability, disability insurance benefits, and supplemental security income benefits under Titles II and XVI of the Social Security Act. The United States district judge transferred this case to the United States magistrate judge, and all parties consented to the jurisdiction of the magistrate judge.

After considering the pleadings, the briefs, and the administrative record, this Court reverses the Commissioner's decision and remands for further consideration.

### Statement of the Case

Following a hearing on October 21, 2010, an Administrative Law Judge (ALJ) determined on February 7, 2011, that Robinson was not disabled. Specifically, the ALJ held that Robinson's impairments did not meet or equal any of the impairments listed in Appendix 1 of the governing regulations, that she had the residual functional capacity (RFC) to perform sedentary

work with nonexertional limitations, and that although she was not capable of performing her past relevant work, she was capable of performing other jobs existing in significant numbers in the national economy. The Appeals Council denied review on July 26, 2012. Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

## Factual Background

Robinson filed for an application for a period of disability, disability insurance benefits, and supplemental security income on May 13, 2009. (Tr. 17, 52). Robinson claims she became disabled on February 3, 2009 (hereinafter date of onset), due to lumbar disc disease, cervical radiculopathy, tachycardia, hypertension, water retention, insomnia, depression, rheumatoid arthritis, and facial spasms. (Tr. 36, 52, 54, 146, 149). Previously, Robinson worked as a correctional officer, a cashier/checker, and a licensed vocational nurse. (Tr. 35, 36, 147, 154-60). Robinson graduated high school and completed training to become a licensed vocational nurse in 1994. (Tr. 35, 152).

Before and after the date of onset, Robinson sought treatment for heart problems, mental problems, back pain, and the ailments listed above. (Tr. 149). Robinson was also diagnosed with schizoaffective disorder of the bipolar type. (Tr. 231, 247). Robinson claims that her alleged disabilities prevent her from sitting or standing for more than one hour, prevent her from carrying more than 8 pounds, and prevent her from standing, bending, climbing stairs, or pushing or pulling anything. (Tr. 146, 180). Robinson also claims the pain suffered from her many ailments prevents her from working. (Tr. 146).

On several occasions dating back to 2004[1], Robinson visited Dr. James Cawley, who provided treatment for all her medical and mental problems. (Tr. 149). Dr. Cawley placed Robinson on several different medications to treat her illnesses. (Tr. 150, 204-221). Dr. Cawley's progress notes indicate that Robinson was admitted to the hospital for a 24 hour period on October 22, 2008,[2] for bradycardia and hypotension. (Tr. 209). These symptoms were thought to be side effects of Metoprolol, one of the medications prescribed to Robinson. (Tr. 202, 209, 210).

Beginning in June 2009, Robinson visited Dr. Glen Mitchell, for treatment of her back problems and blood pressure.[3] (Tr. 175). Dr. Mitchell also placed Robinson on a host of medications (some medications are the same as those prescribed by Dr. Cawley). (Tr. 176).

In 2010, Robinson visited Helen Farabee Regional MHMR twice for treatment of her bipolar disorder and anxiety disorder. (Tr. 228-246). On June 24, 2010, Robinson was admitted to Red River hospital for psychiatric evaluation. (Tr. 20, 248).  Robinson was discharged on July 6, 2010. (Tr. 248).

In September 2009, Robinson was ordered to attend a consultative examination. (Tr. 222-25). During this exam, Robinson complained of "backache, neck pain, heart problems, high blood pressure, facial spasm, rheumatoid arthritis, and insomnia." (Tr. 222). The consultative examiner (CE) reviewed the history of her present illness and performed a physical exam. (Tr. 222-227). Nowhere in the CE's report was there an evaluation or opinion of the functional capacities that Robinson retained. (*see* Tr. 222-227). The CE's report is a presentation of Robinson's history of illness, and a physical exam. (*see* Tr. 222-227).

Subsequently, Robinson's case was twice evaluated by an agency physician: once in

---

[1] The Record provided to the Court only contains records dating back to 2007.
[2] The Record does not include medical records of this admission from the admitting institution and doctor.
[3] The Record does not include any records from Dr. Mitchell.

September 2009, and again in November 2009. (Tr. 260, 261). The September evaluation recited

the CE's findings and opined that Robinson's "allegations [were] not fully supported by the

medical and other evidence." (Tr. 260). The September decision was affirmed by a second

agency physician in November 2009. (Tr. 261).

## Standard of Review

A person is disabled if he or she is unable "to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected

to result in death or which has lasted or can be expected to last for a continuous period of not less

than twelve months." 42 U.S.C. §§ 1382c(a)(3)(A), 423(d)(1)(A) (2012). Additionally, a

claimant is disabled "only if his physical or mental impairment or impairments are of such

severity that he is not only unable to do his previous work but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see* 20 C.F.R. §§

404.1505, 416.911. "'Substantial gainful activity' is work activity involving significant physical

or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir.

2002); 20 C.F.R. § 404.1572(a)-(b) (2013).

To evaluate a disability claim, the Commissioner follows "a five-step sequential analysis

to determine whether (1) the claimant is presently working; (2) the claimant has a severe

impairment; (3) the impairment meets or equals an impairment listed in Appendix 1 of the Social

Security Regulations; (4) the impairment prevents the claimant from doing past relevant work;

and (5) the impairment prevents the claimant from doing any other substantial gainful activity."

*Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4),

416.920(a)(4). "The claimant bears the burden of showing he is disabled through the first four

steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to Steps 4 and 5, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

This Court's review of the Commissioner's decision to deny disability benefits is limited to an inquiry of whether substantial evidence supports the Commissioner's findings, and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson*, 309 F.3d at 272; *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). To determine whether the Commissioner's decision is supported by substantial evidence, the Court weighs four elements of proof: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Martinez v. Chatter,* 64 F.3d 172, 174 (5th Cir. 1990); *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). If substantial evidence supports the Commissioner's findings, then the findings are conclusive and the court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422, 28 L. Ed. 2d 842 (1971); *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Moreover, "'[c]onflicts in the evidence are for the

Commissioner and not the courts to resolve.'" *Id.* (quoting *Newton*, 209 F.3d at 452).

### Discussion

At issue on appeal is (1) whether substantial evidence supports the ALJ's finding at Step 2 of the sequential evaluation process, (2) whether substantial evidence supports the ALJ's RFC finding, and (3) whether substantial evidence supports the ALJ's finding at Step 5 of the sequential evaluation process. (Pl.'s Br. 5-7).

After considering the record as a whole, the ALJ followed the five-step sequential evaluation process and determined that Robinson was not disabled within the meaning of the Social Security Act. (Tr. 19-27). At Step 1, the ALJ found that Robinson did not engage in substantial gainful activity at relevant times. (Tr. 19). At Step 2, the ALJ found that Robinson "had the following 'severe' physical and mental impairments: history of degenerative joint disease; obesity; bipolar disorder; and generalized anxiety disorder." (Tr. 19). At Step 3, the ALJ found that these impairments failed to meet or equal a listed impairment under the applicable regulations. (Tr. 21). Before proceeding to Steps 4 and 5, the ALJ assessed Robinson's RFC and determined that she retained the ability to

> perform sedentary work. . . except with nonexertional limitations. The Claimant can occasionally climb ramps and stairs, balance, and stoop; never kneel, crouch, crawl, and climb ropes, ladders, or scaffolds; and can sit for about thirty minutes at any one time before having to stand at the workstation for three minutes or less. The claimant can frequently, but not constantly, use upper extremities for reaching, handling, fingering, and feeling; must avoid exposure to irritants, such as dust, fumes, gases and poor ventilation. The claimant can have only incidental, superficial work-related contact with the general public.

(Tr. 23-24). At Step 4, the ALJ determined that Robinson was unable to perform any of her past relevant work as a result of her ailments. (Tr. 25). Finally, at Step 5, the ALJ found that Robinson's impairments did not prevent her from performing other work that exists in significant numbers in the national economy, and thus, was not disabled. (Tr. 26).

Because this Court finds that substantial evidence does not support the ALJ's RFC determination, this Court declines to address issues raised at Steps 2 and 5 of the sequential evaluation.

## I.     The ALJ's RFC Determination Was Not Supported by Substantial Evidence

Robinson alleges that substantial evidence does not support the ALJ's finding that she retained the capacity to perform a limited range of sedentary work. (Pl.'s Br. 5). For the reasons below, this Court agrees with Robinson and holds that the ALJ did not have substantial evidence to support his RFC finding.

The ALJ is responsible for determining the claimant's RFC. *See Villa v. Sullivan*, 895 F.2d 1019, 1023 (5th Cir. 1990); 20 C.F.R. § 404.1546. To evaluate a claimant's RFC, the ALJ must consider the limiting effects of all the claimant's impairments, even those that are not severe. 20 C.F.R. § 404.1545(e). The ALJ may also consider evidence such as observations of limitations by the claimant's treating or examining physicians, psychologists, family, friends, or other persons. 20 C.F.R. § 404.1545(a). Such evidence is considered along with the medical evidence to determine the extent of a claimant's limitations. *Id*.

While final decision of a claimant's RFC is reserved for the ALJ, the Social Security Administration has determined that the underlying determination of a claimant's RFC is a medical one. SSR 96-5p, 1996 WL 374183 (Jul. 2, 1996). For example, the determination of whether a claimant can lift a certain weight, or stand for a certain amount of time, must be made by a medical doctor. *See id*.

In *Frank v. Barnhart*, the Fifth Circuit essentially adopted the Seventh Circuit's warning against ALJs "'playing doctor' and making their own independent medical assessments." *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003); *Schmidt v. Sullivan*, 914 F.2d 117, 118

(7th Cir. 1990). *West v. Sullivan* provides a more illustrative use of this notion. In W*est,* a court from this judicial district held that the ALJ's determination of sedentary RFC was not supported by substantial evidence because there was no medical indication in the record that the claimant retained the RFC determined by the ALJ. *West v. Sullivan*, 751 F.Supp 647, 648 (N.D. Tex. 1990). Further, the court held that "the ALJ may not substitute his judgment for that of a vocational or medical expert." *Id*; *see Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982). The court noted that "[i]n the pages cited to by the ALJ, there is *no* medical evaluation by a physician which states Plaintiff can sit for six hours or perform other tasks needed for sedentary work." *West*, 751 F.Supp. at 648 (emphasis in original).

Other circuits have come to similar conclusions. In *Perez v. Secretary of Health and Human Services*, the First Circuit held that "where an ALJ reaches conclusions about claimant's physical exertional capacity without any assessment of residual functional capacity by a physician, the ALJ's conclusions are *not supported by substantial evidence* and it is necessary to remand for the taking of further functional evidence." 958 F.2d 445 (1st Cir. 1991) (emphasis added). In so holding, the court reasoned that the "record [did] not contain any medical evaluation of claimant's physical residual functional capacity." *Id*. Particularly, the court recognized that "an ALJ is not qualified to interpret raw medical data in functional terms." *Id*; *see also Bauso v. Bowen*, 803 F.2d 917, 926 (7th Cir. 1986) ("Neither the Appeals Council nor this court is qualified to make [a] medical judgment about residual functional capacity based solely on bare medical findings as to [a] claimant's. . . condition."). Thus, when an evaluation by a medical source neither includes a functional assessment of a claimant's abilities, nor provides an opinion of limitations caused by the impairments, the evaluation may not be used to support limitations included in the claimant's RFC. *See Suide v. Astrue*, 371 Fed. Appx. 684, 690

(7th Cir. 2010); *see also Schmidt v. Sullivan*, 914 F.2d 117, 118 ( 7th Cir. 1990) ("[J]udges must be careful not to succumb to the temptation to play doctor . . . .Common sense can mislead; lay intuitions about medical phenomena are often wrong."); *Davis v. Astrue,* No. 1:11cv-00267-SA-JVM, 2012 WL 6757440, (N.D. Miss. Nov. 6, 2012) ("Nor is an ALJ allowed to [use his] own lay opinions to fill evidentiary gaps in the record.").

In the instant case, the ALJ ordered Robinson to visit a CE in 2009. (*see* Tr. 222-227). As discussed earlier, the CE essentially performed a history and physical on Robinson. (*see* Tr. 222-227).   The CE's report did not provide an assessment or opinion of Robinson's functional limitations, nor did the CE complete a medical source statement or a residual functional capacity form. The ALJ relied on the opinion of the state agency medical experts, found in Exhibits 8F and 9F, in making the RFC determination. (Tr. 25, 260, 261). Although these opinions were given "less weight," neither opinion actually makes any determination of Robinson's *functional limitations* as a result of her impairments. (Tr. 260, 261). In fact, Dr. Rowley's assessment, found in Exhibit 8F, merely restates the CE's findings and opines that the "allegations [are] not fully supported by the medical and other evidence." (Tr. 260). While such an opinion may be relied upon (along with other substantial evidence in the record) in making a final RFC decision, it, alone, cannot be used to make an assessment of the claimant's functional limitations. Moreover, the record as a whole is silent as to any real RFC assessment, opinion, or suggestion by a medical professional, which is fatal to the ALJ's RFC determination.

## Conclusion

For the foregoing reasons, the decision of the Commissioner is **REVERSED and REMANDED** for further consideration in accordance with this opinion. Any appeal shall be to the Court of Appeals for the Fifth Circuit in accordance with 28 U.S.C. § 636(c)(3).

**SO ORDERED**

Date: August 15, 2014.

_____
**E. SCOTT FROST**
**UNITED STATES MAGISTRATE JUDGE**